UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VEOLIA ES SPECIAL SERVICES, INC.,

    Plaintiff,

v.                                                         Case No. 09-C-363

MALIN INT'L SHIP REPAIR & DRYDOCK, INC.,

    Defendant.

## DECISION AND ORDER

Plaintiff Veolia ES Special Services, Inc. ("Veolia"), a Wisconsin corporation, filed this action against Malin International Ship Repair & Drydock, Inc. ("Malin"), a Texas corporation, alleging breach of contract for Malin's failure to deliver eleven cylinders that were to be installed on a marine vessel located outside the State of Wisconsin. The case arises under the Court's admiralty and maritime jurisdiction. 28 U.S.C. § 1333. Malin has moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Based on the facts before me, I conclude that Wisconsin's long-arm statute, Wis. Stat. § 801.05, does not confer jurisdiction over Malin. Malin's motion to dismiss will therefore be granted.

**I. Background**

Malin, a corporation organized under the laws of Texas, operates a shipyard in Galveston, Texas where it conducts a business repairing and building ships. (Compl. ¶ II.) Veolia, insofar as the complaint reveals, is a corporation organized under the laws of Wisconsin with its principal place of business located in Neenah, Wisconsin, and is the charterer of the M/V SIEM SWORDFISH, a newly built multi-purpose dive support vessel. (*Id.* ¶¶ I, IV.) Veolia apparently

owns other vessels, and since March of 2006, Veolia has used Malin to perform many types of construction and/or repair work on Veolia's vessels and equipment. From March 2006 through February 2008, Malin performed approximately 26 jobs for Veolia, for which Malin submitted invoices to Veolia at Veolia's home office in Wisconsin totaling in excess of $2.3 million. (Aff. of Trent Nedens ¶¶ 6-8.)

Since March 2006, representatives of Veolia and representatives of Malin have had numerous e-mail exchanges and telephone discussions pertaining generally to the business relationship between the parties, including discussions pertaining to Veolia's purchase order and billing requirements. Malin representatives also had telephone discussions with Veolia representatives located in Wisconsin wherein the Malin representatives expressed their appreciation of Veolia's business and solicited additional work from Veolia. At no time during their business relationship did anyone from Veolia visit Malin's yard in Texas, nor did anyone from Malin visit Veolia's headquarters in Wisconsin. (Needen Aff. ¶¶ 9-12.) Apparently, all of the services Veolia contracted with Malin to perform were performed outside of Wisconsin, and no goods were shipped by Malin to Wisconsin.

In November 2007, Malin and Veolia entered into a contract whereby Malin agreed to construct 11 cylinders for one of Veolia's ships for a price of $123,458.82, half of which ($61,729.41) was paid by Veolia as a down payment. All preliminary discussions and contract negotiations took place between representatives of Veolia located in Wisconsin and representatives of Malin located in Galveston, Texas via telephone, email, and/or fax. Malin's proposal for the cylinder work was submitted to representatives of Veolia in Wisconsin. Once the parties reached an agreement, a purchase order was prepared by Malin prior to the commencement of work and was

2

submitted to representatives of Veolia in Wisconsin. Most of the information needed by Malin to construct the cylinders, including specifications and other design details, was exchanged by e-mail or through telephone discussions between representatives of Malin and Veolia, while the Veolia representatives were located in Wisconsin. (Aff. of Todd Marohl ¶¶ 6-13.)

When the cylinders were completed, Veolia contacted Malin to arrange for final payment and delivery of the 11 cylinders. By that time, however, the parties were embroiled in a dispute over a separate contract. Malin informed Veolia that the cylinders would not be released until that dispute was settled. As a result of Malin's refusal to deliver the cylinders, Veolia was forced to secure the cylinders from an alternative source, at an additional cost so that the vessel could function. (Compl. ¶¶ VIII -X.) When Malin refused Veolia's demand that it refund the $61,729.41 Veolia paid as a deposit on the cylinders, Veolia filed suit.

**II. Analysis**

"Personal jurisdiction may be created only by statute or federal rule with the force of statute." *United Rope Distributors, Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991) (citing *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)). Under Fed. R. Civ. P. 4(k)(1), proper service of a summons (which is not contested in this case) establishes personal jurisdiction over a defendant:

> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

3

(C) when authorized by a federal statute.

Here, no pertinent federal statute confers personal jurisdiction over a defendant in admiralty cases, *United Rope Distributors*, 930 F.2d at 534, and Malin was not joined under Rule 14 or 19. I therefore look to Wisconsin law to determine whether a court of general jurisdiction would have personal jurisdiction exists over Malin.

The determination of whether a Wisconsin state court would have jurisdiction over a non-consenting, nonresident defendant is a two-step inquiry. First, the court determines whether the law of Wisconsin-specifically, the Wisconsin long-arm statute-subjects the defendant to *in personam* jurisdiction. *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*, 597 F.2d 596, 598-99 (7th Cir.1979), *cert. denied*, 445 U.S. 907 (1980). If the answer is yes, the court must then determine whether the exercise of jurisdiction under the long-arm statute runs afoul of the due process requirements of the Fourteenth Amendment. *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.1990). Here, I conclude that the analysis fails at the first step.

Under Wisconsin's long-arm statute, jurisdiction over a nonresident defendant can be predicated on any of 13 different sets of circumstances. *See* Wis. Stat. 801.05. Veolia bases its argument that personal jurisdiction exists over Malin on only one of the statute's provisions here. Veolia claims that jurisdiction exists under subsection (1)(d) of the statute which confers jurisdiction over "a defendant who, when the action is commenced:

. . .

(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise."

4

Wis. Stats. § 801.05(1)(d). Veolia argues that the number and magnitude of the jobs Malin performed for Veolia between March of 2006 and February of 2008, and the numerous emails Malin employees exchanged and telephone discussions they participated in with Veolia's Wisconsin personnel, "demonstrate that Malin clearly has a presence in Wisconsin significant enough to subject Malin to personal jurisdiction in this state." (Br. In Opp. at 3.)

The Wisconsin Supreme Court has held that the State's long-arm statute is to be liberally construed in favor of the exercise of jurisdiction. *Federated Rural Electric Ins. Corp. v. Inland Power & Light*, 18 F.3d 389, 391 (7th Cir. 1994) (citing *Schroeder v. Raich*, 89 Wis.2d 588, 593, 278 N.W.2d 871 (1979)). But it is not without limits. Although some courts have stated that "the Wisconsin long-arm statute is intended to reach to the fullest extent allowed under the due process clause," *Fabry Glove & Mitten Co. v. Spitzer, M.D.*, 908 F. Supp. 625, 630 (E.D. Wis. 1995); *Pkware, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1012 (E.D. Wis. 2000); *see also Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d at 917, it is clear that the statute's reach is not identical to what is constitutionally permissible. If it were, the determination of whether the court has personal jurisdiction would not require two separate inquiries. Some state long-arm statutes, Illinois' for example, contain "catch-all" provisions that authorize their courts to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Wisconsin's does not. Although the Wisconsin Supreme Court has often noted that compliance with the State's long-arm statute raises a presumption that the requirements of due process are satisfied, *see, e.g., State ex rel. N.R.Z. v. G.L.C.*, 152 Wis.2d 97, 104, 447 N.W.2d 533 (1989); and *Lincoln v. Seawright*, 104 Wis.2d 4, 10, 310 N.W.2d 596 (1981), it has never construed section 801.05 as having a reach identical to what is constitutionally

permissible. In other words, there is no presumption that every exercise of personal jurisdiction that would be constitutionally sound is covered by the statute.

The Wisconsin Supreme Court carefully examined section 801.05(1)(d) in *Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 184 N.W.2d 876 (1971). The Court first noted that subsection (1)(d) generally corresponded to the "doing business in the state" basis of exercising personal jurisdiction that was common in earlier laws. The other parts of the statute added specific grounds for exercising jurisdiction over nonresidents against whom state residents might have actionable claims in tort or contract. Thus, the first two subsections of the statute "recodif[ied] the jurisdictional grounds of prior law, while [the new subsections] 'incorporate[d] grounds which expand[ed] the exercise of personal jurisdiction.'" *Id.* at 646 (quoting Revision Notes, 30 Wis.Stat.Anno., Pocket Part, p. 32).

In determining whether a nonresident defendant "is engaged in substantial and not isolated activities within this state" under subsection (1)(d), *Nagel* instructs courts to follow the same analytic framework that is used to determine the substantiality of the defendant's contacts for due process purposes, but "the required substantiality of contact will be greater." *Id.* at 648. The factors to be considered in deciding whether a defendant's contacts with Wisconsin are "substantial and not isolated" for purposes of section 801.05(1)(d) include: "the quantity, and the nature and quality of defendant's contacts; the source and connection of the cause of action with those contacts; the interest of the forum state in the action; and the convenience to the parties." *Id.* Each of the factors must then be weighed and considered in relation to each other, rather than merely counting off the presence or absence of each, with a goal of assessing the reasonableness of subjecting the particular nonresident defendant to Wisconsin litigation. *Id.*

6

Veolia argues that consideration of the *Nagel* factors in this case supports a finding of personal jurisdiction over Malin. Veolia notes that a number of courts have held that numerous emails, phone calls, writings, facsimiles, and other forms of communication between a plaintiff and nonresident defendant can satisfy the "quantity of contacts" factor. *See, e.g., PkWare,* 79 F. Supp. 2d; *Druschel v. Cloeren,* 295 Wis.2d 858, 723 N.W.2d 430 (Wis. Ct. App. 2006); *Miller Brewing Co. v. Acme Process Equip., Co.,* 441 F.Supp. 520 (E.D. Wis. 1977). As to quality of contacts, though actual presence in the state is the "highest *quality* of contact [. . .] the next highest quality of contact is personal contact of another type," including phone calls and email. *Druschel,* 295 Wis.2d at 435, 723 N.W.2d at 866. Thus, even if a defendant never physically enters Wisconsin, his personal contact with the plaintiff in Wisconsin can amount to the quality of contact required by Sec. 801.05(1)(d). *See Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992). As to the third factor, "the *source* of the contacts and their *connection* with the cause of action," Veolia notes that this generally means "that the lawsuit arises directly from the defendant's Wisconsin contacts." *PkWare,* 79 F. Supp.2d at 1013. In *PkWare,* the court held that a defendant who failed to perform on an expressly communicated agreement made with a Wisconsin client satisfied the third factor, because the defendant's contacts with Wisconsin dealt only with the agreement made with the Wisconsin client. *Id.* Veolia contends the same applies here. As to the interest of the State of Wisconsin in asserting jurisdiction and the convenience of the parties, Veolia argues that Wisconsin has a strong interest in protecting its residents from breach of contract claims and the relevant witnesses reside largely in Wisconsin. Under these circumstances, Veolia argues that it is reasonable to subject Malin to litigation in Wisconsin.

7

The difficulty with Veolia's argument, however, is that it ignores the clear and unambiguous language of the statute that requires analysis of the defendant's activities in Wisconsin "when the action is commenced." Wis. Stat. § 801.05(1). Veolia has arguably shown that Malin was engaged in substantial and not isolated activities in Wisconsin when the claim arose, but that is not what the statute requires. So far as the record reveals, Veolia was Malin's only customer in Wisconsin. That relationship terminated, however, when the parties became embroiled in litigation in Louisiana in February of 2008, more than a year before Veolia commenced this action on April 6, 2009. And since Malin had no other customers in Wisconsin, it can hardly be said that it still had a substantial presence here after that time. Indeed, even when allowed to supplement the record, Veolia produced only one email sent from a Malin representative in Galvaston, Texas, to Veolia in an unsuccessful attempt to solicit work after the relationship broke down. (Doc. # 15 at 4.) Veolia offers no evidence disputing Malin's assertion that Malin has done no business with Veolia since February 2008.

Veolia argued at the hearing on Malin's motion that, notwithstanding the language of the statute, the court must look to the entire history of the parties relationship in assessing whether section 801.05(1)(d) applies. In support of its argument, Veolia cited *Modern Cycle Sales, Inc. v. Burkhardt-Larsen Company*, 395 F. Supp. 587 (E.D. 1975). In that case, a Wisconsin plaintiff sued a Minnesota defendant for breach of a contract under which the plaintiff served as the exclusive dealer of defendant's snowmobiles in Kenosha County, Wisconsin. The defendant moved to dismiss for lack of personal jurisdiction claiming it had no presence in the State of Wisconsin. In response to the plaintiff's contention that jurisdiction under the predecessor statute to section 801.05(1)(d), the defendant claimed that having terminated its last Wisconsin resident salesperson

8

only seven days before the plaintiff commenced its action, it was no longer engaged in substantial and continuous activities within the State when the action was commenced. 395 F. Supp. at 591. The defendant argued that only its activities at the time of the commencement of the action could be considered in determining whether personal jurisdiction existed under section 801.05(1)(d). The court disagreed:

> In order to determine whether a particular nonresident defendant is 'doing business' within this state, which requires a finding that defendant's activities are 'continuous and systematic' rather than 'isolated,' the court must consider defendant's overall activities within the state, past and present. Without reference to prior activities, the court would be unable to determine whether any contact with the state was 'isolated' or 'continuous.' Essentially, defendant requests this court to determine the substantiality of contacts in isolation and at a precise and fixed point in time. However, in this action defendant's entire association with the state establishes a course of conduct and business relationship with the State of Wisconsin, of which the present activities are merely a part or continuation. In addition, defendant voluntarily entered this state, and while conducting other similar and substantial activities negotiated and consummated a contract with a Wisconsin resident. Under these circumstances, this Court does not believe that it is unreasonable to subject defendant to suit in the courts of this state, and defendant should have anticipated Wisconsin litigation if any breach of the contract occurred.

*Id.* at 591.

The facts of *Modern Cycles Sales* are far different from those before me here. Unlike Malin, the defendant in that case was still doing substantial business in Wisconsin at the time the action against it was commenced. At the time the action was commenced, the defendant still employed two salesmen, residents of Minnesota, who solicited orders in Wisconsin, and continued to sell and ship merchandise to 253 coded Wisconsin retail dealers in this state. The defendant also sold and shipped parts and accessories in the State of Wisconsin on special order. *Id.* at 589. In order to determine whether this activity was continuous and systematic rather than isolated, it was necessary for the court to consider the defendant's activities in the state over a period of time. In this case,

9

by contrast, there is no evidence that Malin had been doing any business in Wisconsin for over a year before Veolia commenced its action. Without evidence that Malin was engaged in any substantial activity in State at the time the action was commenced, there is no need to consider previous activity to determine whether it was isolated, as opposed to continuous and systematic.

Even without a substantial presence in Wisconsin, a nonresident defendant who enters into a contract with a Wisconsin plaintiff will usually be subject to suit here even after the relationship ends under one of the specific jurisdictional provisions of section 801.05(5), but Veolia does not contend that any of those provisions apply. It is therefore left with the burden of demonstrating that Malin was engaged in substantial and not isolated activities in the State when the action was commenced. Because it has failed to meet that burden, Malin's motion will be granted and the action dismissed.

**SO ORDERED** this __24th__ day of July, 2009.

                                                                   s/ William C. Griesbach
                                                                   William C. Griesbach
                                                                   United States District Judge